Raymond Harrington, J.
The defendant is charged with violating subdivision 6 of section 240.35 of the Penal Law of the State of New York, which statute reads as follows: “ A person is guilty of loitering when he: * * * 6. Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes ”.
The People’s first witness was a patrolman from the Lynbrook Police Department who testified in substance that he was assigned to routine motor patrol on the date of the alleged occurrence, November 12, 1969, and his tour of duty was from midnight until 8 o ’clock in the morning. That at about 3:30 a.m., he was proceeding to his home for his dinner break, his home being located on the southeast corner of Blossom Heath Avenue and Sherman Street, Lynbrook, New York. As he was proceeding north on Blossom Heath Avenue, his attention was drawn to a car which had been parked at the curb and had at that point put on its lights and started in motion. The automobile *269 stopped at a full stop sign on the southeast corner of Blossom Heath Avenue and Sherman Street, and had been moving very slowly to that point, and after stopping made a very slow right-hand turn.
The officer drove his police car into the driveway of his house and upon exiting from the police vehicle went to the rear of his house and as he approached the rear door he heard a rustling noise in the backyard. He turned to look for the cause of the noise and he observed an individual run from the backyard and then out an adjoining driveway to Sherman Street. At that moment, the automobile heretofore referred to picked up the individual and sped off. The officer observed the color of the vehicle and part of the license plate number. Thereafter, another patrolman stopped the vehicle. The second police officer testified that upon hearing a radio call describing the vehicle, he observed it, pulled it over and detained the two individuals until the first patrolman arrived on the scene, and, upon questioning the defendants, the police officers testified that the reason offered for their presence in that residential area at that time of the morning was that one of the individuals had to go to the bathroom. The officer further testified that the defendant produced a Florida license, and upon inquiry as to what they were doing generally in that area, the defendant offered no explanation whatsoever.
Defense counsel moved at the close of the People’s case to dismiss on the grounds that subdivision 6 of section 240.35 of the Penal Law of the State of New York is violative of both the Federal and New York State Constitutions; and it is this latter portion of the motion which has presented this, court with a frontal attack on the section.
There have been several reported decisions dealing generally with this type of statute and further one reported decision which determined that this particular section is unconstitutional (People v. Beltrand 63 Misc 2d 1041). The Beltrand decision by Judge Alfred H. Kleimax, Criminal Court of the City of New York, is an excellent dissertation, a very scholarly and erudite decision which rather clearly points up the arguments against the constitutionality of the statute. That case also cites virtually all of the cases which deal with the various questions involved and it would serve little purpose in repeating them here. Although feeling that this was a very scholarly opinion, this court hastens to add that it disagrees with the conclusion reached by Judge Kleiman in the Beltrand case.
*270 The Court of Appeals in passing on the constitutionality of the predecessor section (Penal Law, § 1990-a, subd. 2) found in People v. Bell (306 N. Y. 110) that the predecessor section was constitutional. The only real difference between the old section and subdivision 6 of section 240.35 is that the predecessor section applied to a railway station. The Beltrand case distinguishes People v. Bell (supra) on that basis, namely that the predecessor statute applied to a railway station. The Bell case involved the prosecution for loitering in the Long Beach Railway Station. The Long Beach Railway Station is certainly a public area containing many stores in addition to the usual railroad type facilities, such as rest rooms, ticket windows, information booths, et cetera. To distinguish that case on the basis that it was solely applicable to a railroad station is to engage in legal gymnastics which are not appropriate. This court has in mind railroad stations as they exist today, such as the new Penn Station, Grand Central Terminal, et cetera, and when one considers those types of buildings and areas which are in fact mini-cities within one building, and the Court of Appeals having found that a loitering statute is constitutional when it involves that type of building, there would seem to be little question that it would most certainly be constitutional when it is being applied in the circumstances of a quiet, dark, strictly residential-type neighborhood where the unlawful conduct might certainly be a great deal more relevant that in an edifice such as Penn Station.
Judge Kleimax, in his Beltrand decision (p. 1046), constructs a straw man by raising the question “ But how does a person innocently standing around, protect himself from the suspicions of officers?” The answer, of course, is completely obvious: he identifies himself and tells the police officer why he is standing around, even if that explanation is that he lives down the block and was getting some fresh air.
Judge Kleimax goes on to state (p. 1047) that, “it is ‘ the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. ’ ’ ’ There is certainly no question that such is the duty of the courts, however, the question can be raised certainly as to who ‘ ‘ the citizen” is to which the Supreme Court referred when they enunciated that duty. Should not some consideration be given to “ the citizen ’’who that evening was enjoying a restful night’s sleep in preparation for going about his normal tasks in life the following day while this defendant, at 3:30 a.m., could not offer any explanation whatsoever as to his presence in that area.
*271 The Legislature in enacting this type of statute was apparently most aware of the dangers to the public in a situation described herein which arises when an individual places himself in a situation as described in this case. When a police officer observes an individual on a public sidewalk or roadway in a residential neighborhood in the middle of the night, what is he to do? The answer, when one considers the approach used in the Beltrand case, would be to attempt to keep the individual under observation until he committed an act of violence and then place him under arrest for the commission of that crime. It is the feeling of this court that such a requirement would do violence to our entire concept of the rights of ‘ ‘ the citizen ”. “ The citizen ’ ’ has a right to the privileges and privacy of his own home and should be in a position to enjoy those privileges with the full knowledge that if a police officer observed an individual in or about the public way in front of his premises at 3:30 a.m., in a suburban residential community the police officer should have the right and indeed the obligation to make reasonable inquiry and if the individual cannot or will not identify himself and offer some reasonable explanation for his presence there, that that person will be removed from the area, and further that as a deterrent for him or any others returning under those circumstances he would be charged with the commission of a crime. Has not the prospective defendant in such circumstances not breached his correlative duty to permit “ the citizen ” to enjoy the peace of mind herein indicated?
Of course, other questions were raised dealing with the definition of the words “ loiters ” and “ satisfactory or reasonable account of his purpose and conduct.” These words were discussed at some length in the Bell case and found not to be wanting or violative of any constitutional test of definiteness.
Accordingly, this court finds that the statute is constitutional and further determines that the defendant is guilty of having violated the same.